RULEY, JUDGE:
Claimants are the owners of a tract of land on Newhouse Drive in Kanawha County, West Virginia. This property is adjacent to and below Interstate 77. Following the construction of 1-77, a slip occurred on the downhill side of the highway. A land fill buttress was constructed on property purchased from-the claimants, in order to stabilize the slip. Claimants allege that this construction resulted in a change in the drainage of surface water from 1-77, which has caused their property to be flooded on two occasions. Prior to the first flood in August 1978, water drained through a culvert under 1-77 which emptied onto claimants’ land. Following that flood, respondent *457 constructed a catch basin at the end of the culvert, which attached to a pipe. This pipe extended towards the buttress across claimants’ property. The purpose of the pipe was to direct water towards a drainage ditch, located approximately 30-40 feet from the end of the pipe. The ditch eventually emptied into a creek which runs alongside claimants’ land. The second flood occurred after that construction. Claimants allege damages of $32,400.84, for damages to their home, personal property, and for mental anguish as a result of the two floods. Respondent, in its Answer, denies any act of negligence which caused damage to the claimants. Respondent further states that it is not liable for any alleged damages, due to a release contained in a deed between the respondent and the claimants’ predecessors in title to this land.
The claimants purchased the property in question in 1970. This land was the residue of a tract of land owned by the heirs of A. C. Surface, which had been condemned by the respondent during the construction of 1-77. The deed, between the heirs, as Grantor, and the respondent, as Grantee, contained the following language:
“For the consideration hereinbefore set forth the Grantor hereby releases Grantee, its successors and assigns forever, from any and all claims for damages or compensation of any nature whatsoever arising directly or indirectly from the purchase of the herein described land, or from the construction and maintenance of a highway, or the improvement and maintenance of said land and adjoining lands of Grantee for highway purposes, or from work performed or material placed upon or removed from said land or any adjoining land owned by Grantee. Without limiting the generality of the foregoing, Grantor further expressly releases all claims of Grantor for damages to any residue of land retained, or adjoining or nearby land owned by Grantor; and all damages by reason of increased lateral burden, loss of lateral support, diversion of water courses and streams, concentration and discharge of water on *458 lands' of Grantor, and hindering the flow of water and water courses; it being agreed that the compensation herein provided for as purchase price is full compensation both for the land herein described and for all rights and easements hereby released and all damages herein mentioned which Grantor has or may hereafter suffer.” (Emphasis supplied.)
The respondent argued that the release was a covenant that ran with the land; that the claimants were subsequent purchasers who took the land with notice of the prior deed; and, that the claimants were, therefore, bound by the quoted language. When the language of a document is clear on its face, the Court will construe the document in accordance with specific language therein. The word “covenant” is not used in the deed, only the word “release.” The release applies only to the Grantor and does not purport to bind his heirs, successors, and assigns. Therefore, the release does not bar the claimants,- as subsequent purchasers of the land, from pursuing this plaim which arose subsequent to the release.
Claimant, U. G. Harrison, testified that at the time the slip correction was being performed, he told an unidentified engineer that inadequate provision was being made for drainage. Photographs introduced by respondent show the lack of a discrenable drainage ditch alongside the buttress, Mr. Harrison testified about his concerns over the placement of the culvert, or pipe under 1-77.
“I stood on top of the hill when they put the pipe through and when they started making the fill, and I tried my best to talk them into making a concrete trough there to shed the water down through the ditch and in the creek.
Now, I said, ‘Fellows, that pipe through there and the way you’ve got me fixed here — I’ll never be able to take care of it.’ I said, ‘You’re going to flood me out of here.’ ”
The respondent, through its project engineer for design, Frank Hamrick, contended that neither the culvert nor the *459 extension pipe could have-caused the flooding. In his opinion, the flooding resulted from an overflow of the creek at a point where a 48-inch culvert passes under a driveway to claimants’ property. This culvert was insufficient to handle the creek during a heavy rain, and the overflow would go onto claimants’ land. Claimants testified that they had never seen the creek overflow its banks.
The evidence presented at the hearing was contradictory, but it is the opinion of the Court that the claimants have shown, by a preponderance of the evidence, that the respondent’s actions caused the damages to their property. The construction of 1-77 and the buttress, as well as the placement of the pipe, have resulted in an increase in the amount of surface water discharged onto claimants’ property. One who collects and discharges surface water by means of artificial channels, thereby diverting it from its natural course and increasing its volume, is liable for damages caused by it. Grafton vs. Dept. of Highways, 13 Ct.Cl. 147 (1980).
The only testimony presented concerning the value of the lost personal property was given by Mrs. Harrison. The property included various pieces of furniture, as well as a 5-year-old freezer and the food it contained. These damages amounted to $3,085.00. The Court has taken age arid depreciation into consideration of these damages, and has determined that $500.00 is a just, fair and adequate measure of damages. Three estimates of damage to the real property were submitted. The Court has determined that the amount of $7,325.00 contained in the appraisal report, prepared by Gerald Terry on behalf of the respondent, is a reasonable and fair determination of damages. There is, however, one item of damage not included in this report. This is the replacement of a floor in a small building on the property used as an apartment. As the only estimate of replacement cost of the floor was $975.00, the Court includes that amount in addition to the other damages. The Court, accordingly, makes an award to the claimants in the amount of $8,800.00.
Award of $8,800.00.